UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KITSAP RIFLE AND REVOLVER CLUB,<br><br>                    Plaintiff,<br>       v.<br><br>NORTHLAND INSURANCE COMPANY,<br><br>                    Defendant. | CASE NO. C11-5021 BHS<br><br>ORDER |

THIS MATTER is before the Court on Defendant Northland Insurance Company's Motion for Summary Judgment, Dkt. 85, and Plaintiff Kitsap Rifle and Revolver Club's (KRRC) Cross Motion for Partial Summary Judgment, Dkt. 94.

The case involves KRRC's claim that Northland is obligated under a series of Comprehensive General Liability (CGL) insurance policies to defend and indemnify it from a code enforcement and injunctive relief action asserted against it by Kitsap County.

Kitsap County sued KRRC in Pierce County Superior Court in September 2010, alleging the KRRC's use of its property was a nuisance and that KRRC had violated the Kitsap County land use code, and seeking to enjoin further violations. Dkt. 1-1. KRRC

tendered defense of the claim to Northland in October 2010. On January 6, 2011, KRRC
filed this coverage action, seeking a declaratory judgment that Northland is obligated to
defend and indemnify it from Kitsap County's claims. On January 27, 2011, Northland
began defending KRRC under a reservation of rights. Dkt. 63-14. It has continued that
defense to date. Northland also filed a counterclaim, seeking a declaratory judgment that
its CGL policies do not cover the claims in the underlying suit. Dkt. 7.

In March 2012, the parties agreed to stay this coverage litigation pending the
resolution of the underlying case. Dkt. 57. That case was bitterly contested, but it is now
effectively over. In June 2022, this Court granted Northland's motion to lift the stay,
agreeing that the facts of the underlying cases were sufficiently established to permit the
Court to resolve the coverage issues here. Dkts. 62, 72.

In October 2022, KRRC amended its complaint to assert common law bad faith,
Insurance Fair Conduct Act (IFCA), and Washington Consumer Act (CPA) claims,
alleging Northland had unreasonably denied coverage. Dkt. 81.

Each party now seeks summary judgment on the coverage issue, and Northland
seeks summary judgment on KRRC's extra-contractual claims. Dkts. 85, 94.

## I.   BACKGROUND

The procedural history of the underlying case is long and convoluted. An abridged
version follows.

KRRC is a non-profit corporation. It has operated a shooting range on a 72-acre
Kitsap County parcel for more than 75 years. The Washington Department of Natural
Resources (DNR) originally owned the property and leased it to KRRC. Eight of the

1    acres contain KRRC's facilities, roads, and infrastructure, and the remaining 64 acres are

2    mostly undeveloped timber and wetlands. Those 64 acres were leased as a "buffer" for

3    the shooting range. Dkt. 64-3. DNR sold the property to KRRC in 2009.

4        Kitsap County's 2010 complaint alleges that, beginning in approximately 2001,

5    KRRC began unpermitted site development work on its property, including moving large

6    amounts of earth to create berms, draining wetlands, clearing vegetation in wetlands

7    buffers, and redirecting surface water. It also alleged KRRC installed new shooting areas

8    and lighting for night events, and greatly expanded the timing, frequency, and caliber of

9    its shooting activity on the property. Dkt. 1-1 at 10. It began hosting for-profit tactical

10   weapons training, and tactical shooting competitions, using exploding targets. *Id*. at 11. It

11   also discharged cannons on the property. Northland's CGL policies insured KRRC from

12   1993 to 2006.

13       Kitsap County alleges that, in 2005, it began receiving complaints about the

14   shooting noise and about the use of heavy earth moving equipment on the property.

15   Kitsap County investigated and concluded that the work and KRRC's use of the property

16   violated the Kitsap County Land Use Code. It issued a "stop work" order. Kitsap County

17   and KRRC negotiated, and ultimately litigated, over the land use issues for the next

18   several years, including an ongoing dispute over the scope of KRRC's historic use of the

19   property. The County alleges that KRRC never applied for any land use permits to

20   develop its property, and never applied for a conditional use permit for its shooting

21   activity. *Id*. at 12–13.

22

1    Kitsap County alleged that KRRC's use of the property was a public nuisance, and

2    sought to abate it through its police power. Dkt 1-1 at 14. It also asserted that KRRC had

3    violated the land use code. *Id*. at 16. It sought declaratory judgments on its nuisance and

4    land use claims, and a declaration that the expansions caused KRRC to lose its

5    previously-recognized legal non-conforming use rights. Kitsap County sought

6    preliminary and permanent mandatory and prohibitive injunctions on further violations,

7    and sought to force KRRC to apply for land use and development permits. It sought to

8    enjoin KRRC's use of the property as a shooting range until it obtained the required

9    permits. *Id*. at 17–18.

10    Kitsap County also sought a warrant of abatement, permitting it to enter and

11    inspect the property, remove public nuisance conditions, and require restoration of the

12    wetlands, a stream, and buffers. *Id*. It sought a "Judgment" against KRRC for the amount

13    necessary to abate and correct the violations, and costs, secured by a lien on the property.

14    Dkt. 1-1 at 19.

15    Kitsap County prevailed after a Pierce County Superior Court bench trial in 2012.

16    Dkt. 64-3. The first of several appeals followed. Division Two of the Washington Court

17    of Appeals affirmed the trial court's conclusion that KRRC's commercial use of the

18    property was an impermissible expansion of its legal non-conforming use, that its actions

19    violated the land use code, and that its use of the property was a public nuisance. *Kitsap*

20    *County v. Kitsap Rifle and Revolver Club*, 184 Wash. App. 252, 303 (Div. II 2014). It

21    also affirmed the trial court's injunctions, but it reversed the trial court's conclusion that a

22    proper remedy was the termination of KRRC's right to continue its non-conforming use

1    of its property as a shooting range. It remanded the case for the determination of an

2    appropriate remedy. *Id.*

3         On February 5, 2016, the trial court entered a Supplemental Judgment, ordering

4    KRRC to apply for required site development permits within 180 days. Dkt. 64-4.

5    Around the same time, Northland obtained a Scope of Work (SOW) from a consultant,

6    outlining the $158,000 cost to apply for the required permits. KRRC asked Northland to

7    pay this cost as part of its defense of the case, and Northland declined, arguing that such

8    fees were not defense costs, and that its indemnity obligations had not been adjudicated.

9    It did agree to continue defending KRRC in the underlying lawsuit. Dkt. 95-3 at 3–4.

10        In December 2016, the trial court entered an order granting Kitsap County's

11   motion for contempt, based on KRRC's "intentional act" of failing to comply with the

12   mandatory injunction and failing to apply for the required permits. It continued the

13   injunction on KRRC's use of the property. Dkt. 64-6.

14        On June 28, 2019, after another appeal and another partial remand, the trial court

15   entered an "Order Amending the February 5, 2016, Order Supplementing Judgment on

16   Remand." Dkt. 64-9. It too was appealed, affirmed in part, vacated in part, and remanded.

17   The Court of Appeals remanded the trial court's injunction with instructions to fashion a

18   more specific remedy as to KRRC's commercial use of its property, training, "practical

19   shooting," and KRRC's use of cannons and exploding targets. *Kitsap County v. Kitsap*

20   *Rifle and Revolver Club*, 15 Wn. App. 2d 1061, 2020 WL 7706996 (Dec. 29, 2020).

21        On remand, the trial court entered a "Second Order Amending February 5, 2016,

22   Order Supplementing Judgment on Remand." Dkt. 86-1. It entered a declaratory

judgment finding and concluding that KRRC's use of its property for military training, commercial, for-profit business, the use of cannons, exploding targets, and large caliber rifles, were "unlawful expansions of and changes to the nonconforming use of the property." *Id*. at 6.

As KRRC concedes, the Second Order did not alter the trial court's February 5, 2016, Permitting Order, or its original warrant of abatement remedy. Dkt. 94 at 9. The Second Order enjoined KRRC from using its property for these purposes until it applied for and obtained conditional use permits for those activities. *Id*. KRRC appealed again.

On June 17, 2022, the trial court lifted its 2016 contempt sanction against KRRC, concluding that it did not have the funds to pay for a complete permit application. Dkt. 95-4 at Ex. 18. It did not lift the injunction requiring KRRC to apply for and obtain permits for its use of its property.

After the current motions were filed in this case, the Court of Appeals affirmed the Second Order. *Kitsap County v. Kitsap Rifle and Revolver Club*, 27 Wn. App. 2d 1012, 2023 WL 4105179 (June 21, 2023). As a result, KRRC is prohibited from continuing to use or develop its property in violation of the land use code, and is required to obtain required permits before it can resume its operations. *See* Dkt. 86-1. The trial court's 2012 factual findings were not disturbed in any of the appeals, and they are verities.

## II.   DISCUSSION

### A.   The cross motions for summary judgment.

Northland argues that its CGL policies do not provide coverage for the claims Kitsap County asserted against KRRC in the underlying lawsuit, as a matter of law. It

argues that even if the complaint triggered a duty to defend under a reservation of rights, it has done so for 12 years, and the underlying case is effectively over. Kitsap County did not seek or obtain a money judgment against KRRC; it sought and obtained prohibitive and mandatory injunctions on KRRC's use of its property without required permits. Dkt. 85.

Northland's CGL policies obligate it to pay "those sums that the insured becomes legally obligated to pay as **damages**" because of "**property damage**" to which the policy applies. *Id*. at 5 (citing Dkt. 63-12) (emphasis added). And it argues that its CGL policy covers such property damage only if that damage was caused by an "**occurrence**"—an accident. *Id*. KRRC does not dispute that its CGL policies include these requirements.

Northland argues that Kitsap County's underlying lawsuit did not seek money damages for property damage caused by an occurrence, and that even if that lawsuit triggered the insuring agreement, policy exclusions preclude coverage as a matter of law. The CGL policies include an exclusion for property damage which is the "expected or intended consequence" of the insured's conduct. Dkt. 85 at 16 (citing Dkt. 63-12).

Northland also seeks summary judgment on KRRC's extra-contractual bad faith claims against it. Those claims are based primarily[1] on Northland's refusal to pay what is now estimated to be the $400,000 cost of applying for and obtaining the required land use and site development permits. Dkt. 85 at 5. Northland argues that the cost of paying a

---

[1] KRRC also alleges that it has incurred $48,000 in attorneys' fee defense costs that Northland has yet to pay. Dkt. 85 at 8.

1   consultant to apply for the required permits is not a "defense cost," as a matter of law. *Id*.

2   at 18.

3        KRRC seeks the opposite declaration, as a matter of law. It argues that Kitsap

4   County's underlying action triggered Northland's duty to defend, and that it has had that

5   duty since KRRC's January 2011 tender. Dkt. 94 at 17–20. It argues that the underlying

6   complaint sought "damages" in the form of the cost to abate the nuisance, if Kitsap

7   County is forced to do so after KRRC does not. KRRC argues that that potential still

8   exists today.

9        KRRC also argues that because the waters of the State belong to the public, its

10   alleged damage to the wetlands is effectively "property damage" to a third party, covered

11   by the CGL policies. Dkt. 94 at 25. And KRRC argues that because it did not reasonably

12   foresee that its work on its property would unintentionally damage the wetlands and

13   buffers, those damages were the result of a covered "occurrence". *Id*. at 27.

14        Based on that claimed coverage, KRRC ask the Court to declare that Northland

15   had a duty to defend since at least the date[2] it accepted defense (January 2011), and that

16   Northland must continue to defend KRRC from Kitsap County's claims, including paying

17   for the permit applications it is now required to file, for site work it has already done.

18   Dkt. 94. It emphasizes that the warrant of abatement could expose it to liability for

19   damages. KRRC argues that Northland already agreed (in stipulating to a stay more than

20

---

21       [2] Northland argues, and the Court agrees, that the exact date the duty to defend
was triggered is of no moment. Northland has been defending KRRC continuously since

22   January 2011.

1    ten years ago) that "further proceedings on the warrant of abatement could have a

2    potential effect on the coverage issues in this litigation." Dkt. 94 at 33 (citing Dkt. 56 at

3    4). KRRC argues that it remains exposed to potentially liability for the cost of restoring

4    the wetland; it is "logical to expect that the Permitting Order will ultimately require

5    KRRC to repair, restore, and remediate at least some harm to wetlands and other public

6    property." *Id*.

7            KRRC also opposes Northland's summary judgment motion on KRRC's bad faith

8    claims. Dkt. 94 at 42. It argues that jury could conclude that Northland put its own

9    interests ahead of KRRC's interests by denying coverage for the permit application costs.

10   *Id*. It also argues that its defense counsel has incurred $48,000 in fees that Northland has

11   not paid. *Id*. at 43.

12           The Court addresses each issue in turn.

13   **B.    Summary judgment standard.**

14           Summary judgment is proper if the pleadings, the discovery and disclosure

15   materials on file, and any affidavits show that there is "no genuine dispute as to any

16   material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

17   P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence

18   in the light most favorable to the nonmoving party and draw all reasonable inferences in

19   that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986);

20   *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact

21   exists where there is sufficient evidence for a reasonable factfinder to find for the

22   nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence

1   presents a sufficient disagreement to require submission to a jury or whether it is so one-

2   sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party

3   bears the initial burden of showing that there is no evidence which supports an element

4   essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

5   Once the movant has met this burden, the nonmoving party then must show that there is a

6   genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to

7   establish the existence of a genuine issue of material fact, "the moving party is entitled to

8   judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that

9   the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife*

10  *Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-

11  movant must then produce concrete evidence, without merely relying on allegations in

12  the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

13  **C.      Construing Northland's CGL Policy**

14         The principles governing the Court's interpretation of Northland's insurance

15  contracts are well-settled. As with any contract, the Court's primary goal is to ascertain

16  the parties' intent. The interpretation of an insurance policy is a question of law, and the

17  policy is construed as a whole, with the Court giving force and effect to each clause in the

18  policy. *Queen City Farms* v. *Central National Ins. Co.*, 126 Wn.2d 50, 59-60 (1994); *see*

19  *also American Star Ins. Co. v. Grice,* 121 Wn.2d 869, 874 (1993). The language of an

20  insurance policy is to be interpreted in accordance with the way it would be understood

21  by the average person, rather than in a technical sense. *Id.* If the language is clear and

22  unambiguous, the Court must enforce the policy as written and may not modify it or

create ambiguity where none exists. *American Nat'l Fire Ins. Co. v. B & L Trucking and Const. Co.,* 134 Wn.2d 413, 428 (1998). A clause or phrase is only ambiguous when, on its face, it is fairly susceptible of two different interpretations, both of which are reasonable. *Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wn.2d 654, 666 (2000).

While the insured has the burden of proving that claims fall within a grant of coverage, the insurer has the burden of proving that an exclusion bars coverage. *See McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731 (1992). The duty to defend is broader than the duty to indemnify, and arises at the time the action is filed, based on the potential for liability. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52 (2007). "If the insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend." *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 761 (2002); *see also Canal Indem. Co. v. Adair Homes, Inc.*, 737 F. Supp. 2d 1294, 1303 (W.D. Wash. 2010) ("The procedure to follow when coverage is uncertain is to defend under a reservation of rights and seek a declaratory judgment regarding the issue of coverage.").

The duty to defend is determined by the facts alleged in the complaint. *Indian Harbor Ins. Co. v. Transform LLC*, 2010 WL 3584412, at *3 (W.D. Wash. Sept. 8, 2010) (citing *Holland Am. Ins. Co. v. Nat'l Indem. Co.*, 75 Wash. 2d 909, 911 (1969)). "[I]f a complaint is ambiguous, a court will construe it liberally in favor of triggering the insurer's duty to defend." *Woo*, 161 Wn.2d at 53. Although an insurer may look outside the complaint if the allegations are contradictory or ambiguous, or if coverage is unclear,

1    the insurer may only rely on extrinsic facts to *trigger* the duty to defend. *Grange Ins.*

2    *Ass'n v. Roberts*, 179 Wn. App. 739, 752 (2013) (citing *Woo*, 161 Wn.2d at 52–54).

3    "After obtaining a declaration of noncoverage, an insurer will not be obligated to pay

4    from that point forward." *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 885 (2013)

5    (internal quotations omitted).

6        **1.**    **"Claim for Money Damages."**

7        Northland argues that Kitsap County's complaint in the underlying action sought

8    only injunctive relief, not money damages, and that those claims were not covered by its

9    CGL policy as a matter of law. Dkt. 85 at 10.

10       KRRC asserts that Kitsap County's 2010 complaint (like later versions) sought a

11   warrant of abatement of the nuisance under RCW 7.48.260, and a judgment against

12   KRRC "for such amount as is determined to be necessary to abate and correct the

13   violations alleged[.]" Dkt. 94 at 22 (citing Dkt. 95-1 at 18). It argues Kitsap County's

14   claim could lead to a money judgment against it, triggering Northland's duty to defend.

15       Northland responds that the state of play now is significantly different than it was

16   when Kitsap County sued KRRC, in 2010. After a 2012 trial, findings of fact and

17   conclusions of law, a judgment, numerous appeals, and amended judgments, the case is

18   over. The trial court's final ruling[3] in the underlying case did not include a damages

19   award.

20

21        [3] The Pierce County Superior Court's final order in the underlying case—the descriptively titled "Second Order Amending February 5, 2016 Order Supplementing Judgment on Remand," Dkt. 86-1—has since been affirmed, and it was not further appealed.

22

ORDER - 12

Northland concedes that Kitsap County sought an RCW 7.48.260 warrant of

abatement, and that the trial court agreed that one might ultimately be issued, upon the

County's further showing. *See* Dkt. 64-4 at 5:

> The Court further orders that a WARRANT OF ABATEMENT may be
> authorized upon further application by [Kitsap County], in the event that
> [KRRC's] participation in the County permitting process does not cure the
> code violations and permitting deficiencies on the Property."

But Northland points out that even such a warrant is not itself a monetary

judgment. Under Washington law, the County could obtain a money judgment (and lien

on the property) for the cost of abatement only after it abated the nuisance itself. Dkt. 96

at 6 (citing RCW 7.48.280).

Northland also argues that the trial court ultimately did not order KRRC to do

anything other than stop its unpermitted activities. It initially ordered KRRC to apply for

the required land use permits within 180 days, and held KRRC in contempt for failing to

do so. But it then terminated that contempt when it concluded that KRRC could not

afford to do so. Dkt. 95-4 at 3–4. Northland argues that there is not an order

unequivocally requiring KRRC to apply for any land use permits; KRRC must do so *only*

*if* it wishes to resume its shooting activities on the property.

KRRC disputes this characterization, and on this point, the Court agrees.[4] The trial

court's February 5, 2016 "Order Supplementing Judgment on Remand" did enter a

---

[4] KRRC has recently submitted a Declaration, Dkt. 106, attaching correspondence
between Kitsap County and KRRC regarding the Club's ongoing obligations to obtain necessary
permits for work it has already performed on its property. Northland understandably objects to
this filing as improper. Dkt. 107 (citing LCR 7(m)). The Court need not consider the

1   mandatory injunction requiring KRRC to "apply for and obtain site development

2   permitting to cure its land use violations." Dkt. 64-4 at 5.

3          The Court does not agree, however, that this fact brings this case within the

4   authority upon which KRRC relies. KRRC cites two Washington opinions discussing

5   CGL coverage for the cost of pollution clean-up under strict liability statutes, to assert

6   that the cost of court-ordered compliance with law is covered "damages" under a CGL

7   policy.  The first, *Pederson's Fryer Farms v. Transamerica Ins. Co.*, 83 Wn. App. 432,

8   446 (1996), involved the Department of Ecology-required clean-up of a leaking

9   underground gasoline storage tank, under Washington's Model Toxics Control Act

10  (MTCA), RCW 70.105D.010 *et seq*. The second, *Boeing Co. v. Aetna Cas & Sur. Co.*,

11  113 Wn.2d 869 (1990), involved the Environmental Protection Agency (EPA)-ordered

12  clean-up of a hazardous waste facility under the Comprehensive Environmental

13  Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 *et seq*.

14  In both cases, a Washington court held that mandatory clean-up of pollution[5] under these

15  strict liability statutes amounted to "damage" under a CGL policy. But even if those

16  opinions' reasoning could be applied to work required under local land use laws, it would

17  not reach the land use enforcement action at issue here.

18

19  _____

20  correspondence to conclude that KRRC remains obligated to obtain site development permits
    consistent with the trial court's February 5, 2016 Order.

21         [5] The CGL policies at issue here (like all such policies since 1985) expressly exclude
    coverage for damages caused in any way by "pollution." Dkt. 85 at 16 (citing Dkt. 63-12).
    Accordingly, if and to the extent the County or some other authority sought or someday seeks to
22  force KRRC to clean up the lead from its property, that claim would not be covered.

1    Kitsap County sued KRRC for creating a nuisance with its expanded shooting

2  activity, and for failing to obtain required permits for site development work it chose[6] to

3  do on its property without those permits. Kitsap County's claim was not based on, and

4  did not seek damages for, KRRC's damage to the wetlands or the waters of Washington

5  State. It instead sought an injunction based on KRRC's site work *without the required*

6  *permits*. That is a much different context than the property owner forced to pay to clean

7  up a leaking underground storage tank in *Pederson's*, or hazardous waste generators and

8  transporters facing liability for environmental clean-up costs in *Boeing*.

9    KRRC implicitly acknowledges[7] this by arguing that Northland is obligated to pay

10  as damages (or defense costs) the cost of the permits it is required to obtain before it can

11  continue to operate its shooting range. It is true that the possibility of a warrant of

12  abatement theoretically remains, but there is no current obligation to pay to remediate

13  pollution on the property under a strict liability environmental clean-up statute. As the

14  Court concludes below, the costs to apply for required permits are not the result of an

15  occurrence, and they are not covered under Northland's CGL policies as a matter of law.

16    This is the closest of the three coverage issues raised in the cross motions for

17  summary judgment, but the Court concludes that neither the potential of a warrant of

18  abatement, nor the cost of the permits required as a condition of continuing to use the

19  ───────────

20    [6] This fact is also dispositive on Northland's claim that any damage is not the result of an occurrence, discussed below.

21    [7] KRRC's reply, Dkt. 98, references a letter Kitsap County sent it in March 2019, informing it that the County will not process its application for a permit to continue shooting activity will be "tolled" until it completes the permitting process for its unauthorized site

22  development work. *See* Dkt. 95-4 at 1–2.

ORDER - 15

property as a shooting range, are "damages" under the Northland policies, as a matter of law.

### 2. "Because of property damage."

Northland argues that KRRC is also not entitled to coverage under its CGL policy because it cannot demonstrate property damage to a third party's property. It argues that a CGL insurance policy covers damage accidentally caused to a third party's property, not to the insured's own property. Instead, third party liability insurance protects insureds from liability it incurs to someone else. Dkt. 85 at 12 (citing *Alcoa v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 525 (2000)). Northland argues that the underlying lawsuit did not allege property damage to a third party's property. It points out that, in an appellate brief in the underlying case, KRRC asserted that its operations were safe and did not result in any harm to people, property, or animals. Dkt. 85 at 12 (citing Dkt. 86-2 at 32). Northland adds that KRRC's CGL policies expressly excludes damages for property "owned, rented or occupied" by KRRC. Dkt. 85 at 13 (citing Dkt. 63-12)[8]. It contends that, because KRRC owns all of the property that is the subject of the underlying lawsuit, there is no coverage for any damage to that property as a matter of law.

KRRC's response to Northland's motion, and its own motion, argues that Kitsap County affirmatively alleged in the underlying case that KRRC's property included wetlands, streams, and buffers. It alleged that KRRC used heavy equipment to clear and grade its property to build the "300 yard range." Dkt. 94 at 25 (citing Kitsap County's

---

[8] DKT. 63-12 appears to be incomplete, but Northland's CGL policy is fully set out in the record. The "owned property" exclusion is included at Dkt. 67-3 at 11, paragraph j.

complaints in the underlying case). KRRC argues that Kitsap County alleged it had damaged the wetlands and buffers, and diverted the stream. *Id*. at 25 (citing the County's wetland report in the underlying case, Dkt. 32-1). KRRC argues that "all waters withing the state belong to the public" and therefore Kitsap County's complaint included a claim that KRRC's operations had damaged third-party property. *Id*. at 24 (citing RCW 90.03.10).

KRRC's argument is clever, but it is novel, and it relies on no reported case holding that one who damages wetlands on his own property without permits and is forced to remediate and obtain after-the-fact permits has damaged a third party's property. It does not cite an analogous case holding that the County's threat to abate the damage at the property owner's ultimate expense seeks damages for property owned by a third party. *Pederson* and *Boeing* are not support for such a claim.

Kitsap County sued to abate the nuisance of the unpermitted shooting activity and for the unpermitted site development work on KRRC's property. The Court concludes that Kitsap County's claims in the underlying lawsuit are for unpermitted damage KRRC caused to its own property, not the property of a third party, as a matter of law.

### 3.     "Caused by an Occurrence."

Northland's third and best argument is that even if Kitsap County's complaint can be read to seek money damages because of third-party property damage, its CGL policy does not cover damages that were not caused by an occurrence—an "accident, including repeated exposure to substantially the same general harmful conditions." Dkt. 85 at 14

1    (citing Dkt. 63-12). It argues that KRRC's unpermitted site development work was not an

2    accident, as a matter of law. Dkt. 85 at 15.

3           Specifically, Northland emphasizes out that in 1996, KRRC submitted a "pre-

4    application conference request" to Kitsap County, to discuss permitting for "Range

5    development – Phase 1" site development work it intended to do on the property. Dkt. 85

6    at 15 (citing Dkt. 64-3). Indeed, the trial court so found in its findings and conclusions.

7    Dkt. 64-3 at 9–10. KRRC never followed up with the County, did not apply for the

8    required permits, and did the work anyway. Northland also points out that Kitsap

9    County's 2005 "stop work notice"—issued 5 years before it sued—similarly put KRRC

10   on notice that permits were required for the site development work it sought to do on its

11   property. Dkt. 85 at 15. It argues that the need for permits was not only foreseeable, it

12   was actually known, and ignored. It argues, persuasively, that any ensuing damage was

13   not the result of an accident.

14          KRRC concedes that in the context of a liability policy, Washington courts

15   construe "accident" to mean "an unintended, unexpected event." Dkt. 94 at 25 (citing

16   *Nationwide Mut. Ins. Co. v. Hayles*, 136 Wn. App. 531, 537 (2007)). It acknowledges

17   that "[w]here an insured acts intentionally but claims that the result was unintended, the

18   incident is not an accident if the insured knew or should have known facts from which a

19   prudent person would have concluded that the harm was reasonably foreseeable." *Id.*

20   (citing *State Farm Fire & Cas. Co. v. Ham & Rye, LLC*, 142 Wn. App. 6, 17 (2007)).

21   KRRC argues, correctly, that "to prove that an intentional act was not an accident, the

22

1  insurer must show that it was deliberate, meaning done with awareness of the

2  implications or consequences of the act." *Id*. (citing *Hayles,* 136 Wn. App. at 538).

3        KRRC argues that Kitsap County sought to hold it "liable for the cost of restoring

4  surface waters and wetlands" regardless of whether KRRC "knew or should have known

5  it was causing all of the alleged harm to those protected public resources." It asserts that

6  "intent" was not a part of the County's claim. Dkt. 94 at 27.

7        KRRC repeatedly asserts that it "accidentally and unforeseeably caused harm to

8  some wetlands waterways and buffers where it was allegedly[9] working." Dkt. 94 at 27;

9  *see also* Dkt. 94 at 36; Dkt. 98 at 9, 10. But it cites no evidence in support of its

10  conclusory claim that any damage was accidental or unexpected, and it does not articulate

11  why it should not have expected the results of its ongoing unpermitted site development

12  work.

13        Washington courts have long held that for an accident to occur, "[t]he means as

14  well as the result must be unforeseen, involuntary, unexpected[10] and unusual." *Ham &*

15  *Rye,* 142 Wn. App. at 13 (quoting *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 401

16  (1992)). Consequently, "an accident is never present when a deliberate act is performed

17  unless some additional unexpected, independent and unforeseen happening occurs which

18

19        [9] It is true that Kitsap County's complaint alleged that KRRC had done so. But it is also
20  true that the trial court found as a now-unassailable fact that KRRC did perform unpermitted
    "work" in those areas, in violation of Kitsap County's land use code.

21        [10] Northland argues that Kitsap County's claims are separately excluded from coverage
    under the CGL policy's "expected or intended" exclusion. Dkt. 85 at 16. In the context of this
    case, at least, the arguments are the same as those related to whether there was an occurrence
22  under the policy. The Court need not separately address the exclusion.

1  produces or brings about the result of injury or death." *Id.* (quoting *Butler*, 118 Wn.2d at

2  401).

3         An accident may exist when an intentional act results in something "no reasonable

4  mind[,] under the circumstances, could have foreseen." *Nationwide Mut. Ins. Co. v.*

5  *Hayles, Inc.*, 136 Wn. App. 531, 539 (2007). In other words, "where the insured acts

6  intentionally but claims that the result was unintended, the incident is not an accident if

7  the insured knew or should have known facts from which a prudent person would have

8  concluded that the harm was reasonably foreseeable." *See Ham & Rye*, 142 Wn. App. at

9  16.

10        In *Hayles*, the insured landlord's employee intentionally turned an irrigation

11  system on after being told by its farmer tenant not to, soaking and ruining the farmer's

12  onion crop. 136 Wn. App. at 534–535. On summary judgment, the trial court ruled that

13  the farmer's claim was covered, concluding that the damage was accidental. The court of

14  appeals affirmed, because there was no evidence the insured

15        knew or should have known that turning on the irrigation system would
16        damage the onion crop. He had no duty to observe the crop and had no
       authority to decide when the crop needed water or when it needed to be dry.
17        Reasonable minds could only conclude that no one under these
       circumstances would have anticipated that turning on the water could rot
18        the onions.

19  *Hayles*, 136 Wn. App at 539.

20        As Northland asserts, these facts are not analogous, and *Hayles* is not support for

21  KRRC's claim that it could not have reasonably expected the results of its actions. A

22  reasonably prudent person in KRRC's position would have foreseen that its years-long

1    heavy site development, including diverting streams and draining wetlands, would

2    require a permit, and it would damage those wetlands. "Where the insured acts

3    intentionally but claims that the result was unintended, the incident is not an accident if

4    the insured knew or should have known facts from which a prudent person would have

5    concluded that the harm was reasonably foreseeable." *Ham & Rye*, 142 Wn. App. at 16.

6         KRRC's claim that it subjectively believed its conduct was "lawful," Dkt. 94 at

7    27, is similarly unavailing against this standard. First, it knew it need permits as early as

8    1996, when it met with Kitsap County regarding its proposed "Phase I Range

9    Expansion." Dkt. 96 at 10 (citing Dkt. 64-3 at 9–10). KRRC does not and cannot

10   expressly claim that it had no knowledge that its work required a site development

11   permit. KRRC approached Kitsap County about its site development proposal in 1996. It

12   did not follow up, and began the work without permits that were legally required. In

13   2005, Kitsap County told KRRC its work was illegal and unpermitted, and ordered it to

14   stop work. It did not. It continued its site development work without permits. Dkt. 64-3 at

15   9.

16        Second, even if KRRC honestly believed the County was wrong about the permit

17   requirements, it cites no authority for the proposition that one who subjectively believes

18   his conduct is lawful has "accidentally" violated the law. Washington law does not

19   support this position. Physically unlikely effects from shooting a gun or lighting a fire

20   may qualify as unforeseeable but violating an obscure law would not. *Detweiler v. J.C.*

21   *Penney Cas. Ins. Co.*, 110 Wn.2d 99, 108 (1988).

22

An unpublished opinion from this District rejected a similar argument in *Western National Ass. Co. v. Burns Towing, Inc.*, No 18-cv-05886 RBL, 2019 WL 2548689 (W.D. Wash. June 20, 2019). There, the insured tow truck operator, Burns, sold several active-duty servicemembers' towed vehicles after they failed to timely claim them, violating Washington and federal law. *Id*. at *1. Burns claimed that the violation was the result of an unintended and unforeseeable mistake of law, and thus covered by his CGL policy. Judge Ronald B. Leighton disagreed, holding that the failure to know and follow the law was not an accident as a matter of law. *Id*. at * 4 ("[A] reasonable towing operator would be aware of all laws governing the sale of impounded vehicles, making any resulting harm foreseeable.") (citing *Hayles*, *Butler*, and *Ham & Rye*).

*Burns* also relied in part on another unpublished opinion, *Aetna Casualty and Surety Company, Inc. v. Puget Sound Power & Light Co.,* 880 F.2d 1323, *1 (9th Cir. 1989). The insured there built a hydroelectric dam that diverted water away from a tribal reservation. The tribe sued for violations of its water and fishing rights. *Id*. The insured argued that there was a duty to defend because it did not realize that diverting water from the tribe was illegal, rendering the conduct accidental. *Id*. at *3. However, because the tribe's injuries were the "natural consequence" of building the dam and there was no "additional unexpected, independent or unforeseen happening," the alleged injury was not caused by an "accident" or "occurrence" as a matter of law. *Id*. at *4-6.

KRRC's second argument, that it did not intend or expect to damage the wetlands stream and buffer on its property, is similarly unpersuasive. KRRC does not, and in the Court's view, cannot, explain how it moved hundreds of cubic yards of material, drained

wetlands (by installing two 475 foot long, 24-inch culverts, Dkt. 64-3 at 16), and diverted a stream, while neither intending nor *expecting* to harm to those wetlands. The claim that any damage was accidental is not analogous to the insured landlord's conduct in *Hayles*. It is instead more like the insured's conduct in *Butler*.

In *Butler*, an insured homeowner's mailbox was vandalized. The insured, Butler, saw a truck leaving his property, claimed he saw a flash, and fired six shots at the truck. A bullet ricocheted and struck a passenger. Butler claimed he did not intend or expect the resulting injury, and that it was therefore an accident for purposes of his insurance policy. *Butler*, 118 Wn.2d 383 (1992). The Washington Supreme Court disagreed, holding that "no reasonable person could conclude that Butler was unaware of the possibility of a ricochet, or that a ricochet might hit an occupant of the truck. Therefore [the] injury is not the result of an 'accident' and Safeco has no obligation to provide coverage to [Butler] for that injury." *Id*. at 401.

It was foreseeable to a reasonable person as a matter of law that KRRC's conduct at its property was unlawful, and that it would damage the wetlands that it was purposefully draining. It is one thing to claim, "I intended to cut down the tree, but I did not expect that it would land on my neighbor's roof." It is another to claim, "I intended to cut down the tree, but I did not expect that it would die."

Northland's CGL policy does not provide coverage for any injury alleged in Kitsap County's underlying lawsuit, as a matter of law. KRRC's motion for partial summary judgment on its coverage claim is **DENIED**. Northland's motion for summary judgment is **GRANTED**, and it is entitled to a Declaratory Judgment that it has no

1  further obligation to defend or indemnify KRRC from the claims in that underlying

2  lawsuit.

3  **D.    KRRC's bad faith claims.**

4       KRRC's bad faith claims assert that Northland unreasonably denied coverage, and

5  put its own financial interests above its insured's when it failed to pay for the site

6  development permits Kitsap County requires as a condition of permitting KRRC to

7  resume its shooting activity on the property. It contends that Northland's unreasonable

8  breach of the insurance contract has caused it to lose the use of its property, and to lose

9  revenue from that use, as the result of its inability to operate. Dkt. 81. KRRC's response

10 to Northland's summary judgment motion also contends that Northland has failed to pay

11 $48,000 in defense costs (attorneys' fees), in bad faith. Dkt. 94 at 44.

12      Northland seeks summary judgment on each of KRRC's bad faith claims, arguing

13 there is no evidence that it acted unreasonably in investigating or defending KRRC in the

14 underlying lawsuit.

15      An insurer has a duty of good faith to its policyholder and violation of that duty

16 may give rise to a tort action for bad faith. *Truck Ins. Exch. v. Vanport Homes, Inc.,* 147

17 Wn.2d 751, 765 (2002). To succeed on a bad faith claim, the policyholder must show the

18 insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded.

19 *Overton v. Consol. Ins. Co.,* 145 Wn.2d 417, 433 (2002). Whether an insurer acted in bad

20 faith is a question of fact. *Van Noy v. State Farm Mut. Auto. Ins. Co.,* 142 Wn.2d 784,

21 796 (2001). If reasonable minds could differ that an insurer's conduct was reasonable, or

22 if there are material issues of fact with respect to the reasonableness of the insurer's

1 action, then summary judgment is not appropriate. *Smith v. Safeco Ins. Co.*, 150 Wn.2d

2 478, 486 (2003).

3       Even viewing the evidence in the light most favorable KRRC, there is no basis for

4 concluding that Northland has acted unreasonably in failing to pay (as defense costs or

5 damages) the cost of obtaining the site development permits it was told it was required to

6 obtain before its site work began. That cost was and is a discretionary one, required if and

7 only if KRRC elected to develop its property.

8       KRRC's bad faith claim based on the $48,000 balance is not explained. Northland

9 asserts that it has paid almost $2,000,000 in defense costs since it began defending, and it

10 asserts without rebuttal that it will review and pay counsel's invoices in the normal

11 course of business, as it has since the start of its defense. It further asserts that it has

12 requested and not yet seen a line-item detail of any outstanding invoices. KRRC has not

13 met its summary judgment burden of demonstrating that there are material issues of fact

14 about the reasonableness of Northland's conduct on this point.

15       Northland's summary judgment motion on KRRC's bad faith, IFCA, and CPA

16 claims is **GRANTED**, and those claims are dismissed with prejudice.

17       The Clerk shall enter a **JUDGMENT** and close the case.

18       **IT IS SO ORDERED.**

19       Dated this 29th day of February, 2024.

20

21

22       BENJAMIN H. SETTLE
      United States District Judge